[Cite as *State v. Hancock*, 2010-Ohio-4854.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-JE-30 |
| | ) | |
| JAYCE HANCOCK, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:   Criminal Appeal from Court of Common
Pleas of Jefferson County, Ohio
Case No. 08CR182A

JUDGMENT:                            Affirmed in Part
Remanded

APPEARANCES:
For Plaintiff-Appellee              Jane Hanlin
Assistant County Prosecutor
Jefferson County Justice Center
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant          Attorney Anthony T. Kaplanis
701 Courtyard Centre
116 Cleveland Avenue NW
Canton, Ohio 44702

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: September 29, 2010

DONOFRIO, J.

{¶1} Defendant-appellant, Jayce Hancock, appeals from a Jefferson County Common Pleas Court judgment convicting him of two counts of having weapons under disability and one count of possession of drugs, following a jury trial.

{¶2} On November 13, 2008, police arranged a controlled crack cocaine buy from Charnay Young through a confidential informant. Based on this controlled buy and other indications of drug activity at Young's house, police obtained a search warrant for her house. The Jefferson County drug task force executed the warrant later that night.

{¶3} Appellant was present in Young's house when police executed the warrant along with Young, her brother Darnell Young, her cousin Michael Curenton, and her one-year-old son. When the police entered the house, they ordered everyone to the floor. Appellant did not initially comply. According to Detective Jason Hanlin, appellant remained standing directly in front of the couch. Appellant then fell back onto the couch with his hand in between the couch cushions and the back of the couch. Detective Hanlin ordered appellant to show his hands. After numerous orders, appellant eventually complied.

{¶4} The officers handcuffed everyone and took them outside. Then they searched the house. In the couch where appellant was sitting, police found a .357 Taurus Magnum revolver, a .25 Raven Arms pistol, and crack cocaine. Some of the crack cocaine and the Magnum were found under the cushion where appellant had been sitting. The Raven was found in the spot in the couch where appellant had stuck his hand when he fell back on the couch. And the rest of the cocaine was found behind the couch as if it had fallen between the spring portion and the backrest of the couch.

{¶5} Appellant was arrested and charged with possessing the crack cocaine and the guns found in the couch. Young was also arrested and charged with drug trafficking from the earlier sale and drug possession for additional cocaine that was found on her person. Darnell Young and Curenton were not arrested on any charges.

{¶6} A Jefferson County grand jury indicted appellant on two counts of having a weapon under disability, third-degree felonies in violation of R.C. 2923.13(A)(3), and one count of possession of drugs, a fourth-degree felony in violation of R.C. 2925.11(A)(C)(4)(b).

{¶7} The matter proceeded to a jury trial where the jury found appellant guilty of the two counts of having a weapon under disability and an amended count of possession of drugs, which was a fifth-degree felony. The court later sentenced appellant to three years on each of the having a weapon under disability counts and 12 months on the drug possession count. The court ordered that appellant serve his sentences consecutively for a total of seven years in prison.

{¶8} Appellant filed a timely notice of appeal on August 17, 2009.

{¶9} Appellant raises four assignments of error, the first of which states:

{¶10} "THE TRIAL COURT ERRED IN ADMITTING TESTIMONY REGARDING THE COCAINE POSSESSION CHARGE AS THE STATE FAILED TO COMPLY WITH R.C. 2925.41[sic.] AND RULE 702."

{¶11} For unknown reasons, the alleged crack cocaine in this case was never tested in a laboratory. Consequently, the state relied on Detective Hanlin's field testing and visual identification in order to establish that the substance found was indeed crack cocaine.

{¶12} After seizing the substance believed to be crack cocaine from Young's house, Detective Hanlin conducted a field test on the substance, which tested positive for crack cocaine. On the day of trial, Detective Hanlin conducted a second field test on the substance, which again tested positive for crack cocaine. Appellant moved for a mistrial or, in the alternative, objected to the admission of these results. (Tr. 269). The court overruled appellant's motion and objection and allowed the state to present the evidence of Detective Hanlin's field tests. (Tr. 271).

{¶13} Appellant makes two arguments here. First, he contends that the trial court erred in allowing the evidence of the field tests.

{¶14} The admission or exclusion of evidence is within the trial court's broad

discretion and this court will not reverse its decision absent an abuse of that discretion. *State v. Mays* (1996), 108 Ohio App.3d 598, 617. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.3d 151, 157.

{¶15} In support of his argument, appellant first relies on R.C. 2925.51(A) and (B).

{¶16} R.C. 2925.51(A) provides that in a criminal prosecution for various offenses, including possession of controlled substances, a signed lab report from certain accredited laboratories setting out findings as to content, weight, and identity serves as prima facie evidence of the content, weight, and identity of the substance. R.C. 2925.51(B) provides that the prosecutor must provide a copy of the lab report to defense counsel prior to any hearing in which the lab report will be used against the accused.

{¶17} R.C. 2925.51 sets out the requirements for a lab report offered as evidence that a certain substance is in fact a controlled substance. The requirements include a notarized statement describing the training and experience of the tester. It further provides that such a report is prima facie evidence as to content, weight, and identity of a controlled substance. But nowhere does this statute require that the prosecution present such a lab report. Thus, appellant's reliance on this statute is somewhat misplaced.

{¶18} Yet it seems that had the legislature intended that field tests be admissible as prima facie evidence of a substance's identity, it would have enacted similar requirements for field tests if they too were to be admissible as prima facie evidence. The fact that no such requirements exist, seems to indicate that a field test is not prima facie evidence of a substance's identity. Nonetheless, while a field test may not be prima facie evidence of a substance's identity, it can still have some evidentiary value.

{¶19} Appellant next points out that Detective Hanlin testified that the normal

practice after seizing what he believes to be a controlled substance and doing the initial field test is to have the substance tested at a laboratory. And Detective Hanlin acknowledged that he had learned that a presumptive test could turn out to be incorrect.

{¶20} Detective Hanlin testified as to the type of test he performed. He stated that it is commonly referred to as a "color indication" test. (Tr. 353). He stated that the test includes a small, plastic ampule that contains chemicals. (Tr. 353). To that ampule he adds a small portion of the suspected drug and when it mixes with the chemicals it will turn a color. (Tr. 354). The color will turn from pink to blue if the substance in question is crack cocaine. (Tr. 354).

{¶21} Appellant is correct as to Detective Hanlin's testimony. Detective Hanlin admitted that it is normal procedure to have a seized substance tested in a laboratory after it is field-tested. (Tr. 365). He further testified that it is possible for a field test to be incorrect. (Tr. 366-67). But he also stated that he never had a false positive with cocaine or crack cocaine during his thousands of tests. (Tr. 367).

{¶22} Relevant evidence is any evidence tending to make a fact at issue more or less probable than it would be without the evidence. Evid.R. 401. Generally, relevant evidence is admissible. Evid.R. 402.

{¶23} Although the better practice here would have been to follow up the field tests with a laboratory test, we cannot conclude that the trial court abused its discretion in allowing the results of the field tests. While Detective Hanlin stated that it is normal procedure to submit a presumed drug for laboratory testing, he never stated that the failure to do so here in any way affected the field test results. And while he stated that it is "possible" to have a false positive with cocaine or crack cocaine, he further stated that he has never seen this occur in his thousands of field tests. Importantly, the jury had all of this information before it in determining what weight to give the field test results. Thus, the trial court did not abuse its discretion in admitting evidence of the field tests.

{¶24} Second, appellant argues that even if the field tests were admissible,

the trial court erred in finding Detective Hanlin qualified to testify regarding the test results. He asserts that Detective Hanlin did not meet the requirements for testifying as an expert under Evid.R. 702.

**{¶25}** Whether a witness is qualified to testify as an expert is a matter within the trial court's discretion. *State v. Awkal* (1996), 76 Ohio St.3d 324, 331. Therefore, we will review a trial court's decision to qualify a witness as an expert for abuse of discretion.

**{¶26}** Evid.R. 702 provides the qualifications a person must meet in order to be called as an expert:

**{¶27}** "A witness may testify as an expert if all of the following apply:

**{¶28}** "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

**{¶29}** "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

**{¶30}** "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

**{¶31}** "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

**{¶32}** "(2) The design of the procedure, test, or experiment reliably implements the theory;

**{¶33}** "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

**{¶34}** Detective Hanlin testified as follows regarding his knowledge and experience in drug identification and specifically in crack cocaine identification.

**{¶35}** As part of his training as a police officer and as part of his role as a

detective with the narcotics division, Detective Hanlin has received training in the area of identification of controlled substances. (Tr. 350). He has attended numerous state agencies' training programs as well as federal DEA training that dealt specifically with the identification of narcotics. (Tr. 351). He has been trained how to visually identify substances and how to perform field testing. (Tr. 351). Further, Detective Hanlin stated:

**{¶36}** "The bulk of my cases deal with crack cocaine or powder cocaine. It's a substance that I deal with almost on a daily basis. To me it's almost second nature. I've done it for years. I'm able to identify that as crack cocaine even though it looks very similar somewhat to I guess the ordinary person powder cocaine. From what I do I'm easily able to identify that as crack cocaine." (Tr. 351).

**{¶37}** Detective Hanlin also holds a certification in the identification of such substances. (Tr. 352). And he has been identifying crack cocaine for eight years, both in his cases and in other officers' cases. (Tr. 352).

**{¶38}** At this point, the prosecutor asked that the court designate Detective Hanlin as an expert in the identification of controlled substances. (Tr. 352-53). Appellant objected. (Tr. 353). The court reserved ruling until after cross examination.

**{¶39}** On cross examination, Detective Hanlin admitted that it is normal procedure to have a seized substance tested in a laboratory after it is field-tested. (Tr. 365). He admitted he is not a chemist. (Tr. 365). And Detective Hanlin testified that it is possible for a field test or "presumptive" test to be found to be incorrect. (Tr. 366-67). However, he followed this statement up by stating that he had never had a false positive with cocaine or crack cocaine during his thousands of tests. (Tr. 367).

**{¶40}** Based on the above, the trial court determined that Detective Hanlin was qualified to testify as an expert in drug identification. (Tr. 415). It further determined that Detective Hanlin could also testify as a lay witness on the subject. (Tr. 415).

**{¶41}** The trial court did not abuse its discretion in designating Detective

Hanlin as an expert in drug identification. There were many factors that the trial court could have used to reach this conclusion. Detective Hanlin has eight years of experience with drug cases, the bulk of which involved cocaine or crack cocaine. He has attended numerous trainings in both visual drug identification and field testing. He holds a certification in drug identification. He works with cocaine and crack cocaine "almost on a daily basis" and identifying the drug has become "almost second nature" to him. Given these factors, the trial court was within its discretion in designating Detective Hanlin as an expert in drug identification.

{¶42} Furthermore, in *State v. McKee* (2001), 91 Ohio St.3d 292, at the syllabus, the Ohio Supreme Court held:

{¶43} "The experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established."

{¶44} The Court made this holding in a case where it ultimately found that the state did not establish a foundation for the lay witnesses' opinion that the substance in question was marijuana.

{¶45} One court has found that the Court's holding in *McKee* is limited to marijuana cases. *State v. Adkinson*, 8th Dist. No. 81329, 2003-Ohio-3322. However, had the Court intended to limit its holding merely to marijuana cases, presumably it would have stated so in its syllabus instead of holding that the witness could express an opinion on the identity of a "controlled substance."

{¶46} Furthermore, at least two other districts have applied *McKee's* holding to cases involving crack cocaine.

{¶47} In *State v. Miles*, 3d Dist. No. 4-02-28, 2003-Ohio-1370, the defendant appealed his trafficking in crack cocaine convictions arguing in part that there was no evidence as to the nature or amount of the substance alleged to be crack cocaine because the state failed to provide either a lab analysis or expert testimony to prove the identity and quantity of the drugs sold. The state argued that it could not provide such evidence because the alleged drugs were smoked in their entirety. As proof

that the substance in question was crack cocaine, the state offered the testimony of Perez, an admitted crack addict. Perez testified that the defendant had supplied her with crack in the past and based on her experience with crack and how it affected her, the substance supplied by the defendant was crack. Citing *McKee*, the Third District held that Perez's testimony, along with other evidence, was sufficient evidence that reasonable minds could have reached different conclusions as to whether the substance in question was crack cocaine. Id. at ¶13.

**{¶48}** And in *State v. Ross*, 2d Dist. No. 19036, 2002-Ohio-6084, the defendant appealed his drug trafficking conviction arguing in part that the state failed to qualify a detective as an expert in the visual identification of crack cocaine. The Second District disagreed. It cited to the detective's qualifications, which included that the detective had encountered crack cocaine thousands of times while working as a drug detective, he was more than 95 percent accurate when visually identifying crack cocaine, he was able to describe the appearance of crack, and he explained why he believed the substance in question was crack. Id. at ¶14. Based on the above, the court found that the detective was qualified to render an expert opinion as to the identity of the substance at issue. Id. Quoting *United States v. Brown* (8th Cir. 1998), 156 F.3d 813, 816, the court observed, "[s]uch testimony is admissible because crack cocaine 'usually has a distinctive appearance and form' that makes it easily recognizable to a person who is experienced with the drug." Id.¶14, fn. 1. And in another footnote, the court questioned whether it was even necessary for the trial court to qualify the detective as an expert, since the *McKee* Court had approved the use of lay witness testimony to establish the identity of a suspected controlled substance. Id. at fn. 2.

**{¶49}** Based on the above, the trial court did not err in finding Detective Hanlin qualified as an expert in drug identification who could give his opinion that the seized substance was crack cocaine.

**{¶50}** Accordingly, appellant's first assignment of error is without merit.

**{¶51}** Appellant's second assignment of error states:

**{¶52}** "THE TRIAL COURT ERRED BY FAILING TO MERGE APPELLANT'S CONVICTIONS AND SENTENCES FOR TWO COUNTS OF HAVING A WEAPON UNDER DISABILITY WHEN THE CONVICTIONS RESULTED FROM THE SAME TRANSACTION."

**{¶53}** Here appellant first argues that because both weapons he was found to have possessed were part of the same incident, the state failed to prove a separate animus for each one and, therefore, he should have only been convicted of one count of possessing weapons under a disability. Alternatively, appellant argues that even if the possession of each weapon constituted a separate offense, the offenses would be allied offenses of similar import and the trial court should have merged them for sentencing.

**{¶54}** Appellant did not specifically argue merger during his sentencing hearing. However, his counsel argued that the court had to run appellant's sentences concurrently "because of the fact it's all at once and the facts are that it was all at once." (Sentencing Tr. 10). Whether this argument preserved the issue of merger for appeal is arguable.

**{¶55}** But even if counsel did not properly preserve the merger issue for appeal, we may nonetheless review this argument for plain error. Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 97. "Because an error related to merger affects a defendant's right to protection from double jeopardy, and because an erroneous failure to merge convictions inevitably causes a different outcome in a defendant's trial, the failure to merge convictions on allied offenses of similar import will almost always result in plain error." *State v. Haslam*, 7th Dist. No. 08-MO-3, 2009-Ohio-1663, at ¶62. Thus, if the court here failed to properly merge appellant's convictions, the result is plain error.

**{¶56}** In support of his argument, appellant relies on *State v. Thompson* (1988), 46 Ohio App.3d 157. The facts of that case are remarkably similar to the facts here. In *Thompson*, police responded to a domestic complaint. The appellant

answered the door. The appellant complied with the officers' request to remove his hands from his pockets and in so doing, reached around and removed a gun from his pocket and dropped it on the floor. Upon a search of the residence, officers also found another gun on a table approximately eight to ten feet away from where the appellant was standing. The appellant was later convicted of two counts of having a weapon under disability.

{¶57} The appellant appealed arguing in part that the two counts of having a weapon under disability were allied offenses of similar import and, therefore, the court erred in imposing separate convictions and multiple sentences for them. The Ninth District agreed citing a previous case:

{¶58} "In *State v. Sharpe* (May 28, 1980), Summit App. Nos. 9500 and 9529, unreported, we addressed this precise point of law. In *Sharpe* we held that the simultaneous possession of weapons by one under disability is but one offense. Also, we held that, assuming *arguendo* that possession of each weapon constituted a separate offense, the offenses would be allied offenses of similar import pursuant to R.C. 2941.25(A) and as such the defendant could be convicted of but one offense." Id.

{¶59} Other courts have reached similar conclusions on this issue. See *State v. Pitts* (Nov. 6, 2000), 4th Dist. No. 99-CA-2675 (Where defendant was convicted of seven counts of having a weapon under disability for seven handguns all found in a purse, "the simultaneous, undifferentiated possession of weapons by a person under a disability constitutes only one offense and not separate offenses for each weapon."); *State v. Israel* (July 22, 1992), 9th Dist. No. 15487 (Trial court should have merged defendant's two convictions for carrying a concealed weapon where one weapon was concealed in defendant's ankle holster and the other was concealed in the seat of his automobile.); *State v. Woods* (1983), 8 Ohio App.3d 56 ("When a defendant conceals several weapons in one location at one time, his conduct is essentially one continuous, indivisible act," and therefore the trial court should have merged the defendant's convictions for three separate counts of carrying

concealed weapons.)

**{¶60}** The case at bar bears many similarities to the above cited cases. Appellant was convicted on two counts involving two guns. Appellant's guns were located very near each other, but not in the exact same location. And appellant "possessed" the guns at the same time.

**{¶61}** R.C. 2941.25 addresses the issue of merger and provides:

**{¶62}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶63}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶64}** This statute requires a two-part analysis. First, the court must determine whether the elements of the two offenses, when considered in the abstract, correspond in such a way that the commission of one necessarily results in the commission of the other. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, at ¶27. Second, the court must determine whether the defendant committed one of the offenses with a separate animus than the other or whether he acted with only one animus. Id. at ¶31.

**{¶65}** Appellant's two convictions are both for violations of R.C. 2923.13(A)(3). Thus, their elements are identical in the abstract. Further, appellant's conduct in the commission of both offenses indicates a single animus. According to Detective Hanlin, one firearm was located under the couch cushion where appellant was sitting and the other was found between the couch's backrest and cushion where appellant was seen to have placed his hand when he sat down. (Tr. 332-33). And according to Young, appellant possessed both weapons earlier that day and had

them both in his pants. (Tr. 191-93).

**{¶66}** Based on the above, the trial court should have merged appellant's two weapons counts. Both the case law and the statutory test support this conclusion. Accordingly, appellant's second assignment of error has merit.

**{¶67}** Appellant's third assignment of error states:

**{¶68}** "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE IN VIOLATION OF EVIDENCE RULE 403(A)."

**{¶69}** Detective Hanlin testified he had learned that drugs were being sold from Young's house. (Tr. 303). Consequently, he met with a confidential informant (CI) and set up a controlled crack cocaine buy from Young for November 13, 2008. (Tr. 303-305). Detective Hanlin stated that the CI went to Young's house and encountered a man named Jarvis in the kitchen who was cooking crack cocaine. (Tr. 308). He stated that the CI went outside to wait for Young. (Tr. 309). When Young arrived, the CI was able to purchase crack cocaine from her. (Tr. 309-310). Detective Hanlin stated that another detective then used this information to secure a search warrant for Young's house. (Tr. 310). He admitted that appellant was not part of this investigation until officers found him in Young's house when they executed the warrant. (Tr. 381).

**{¶70}** Appellant contends that the trial court should not have permitted Detective Hanlin's testimony regarding the arranged drug buy that the CI made from Young. He points out that the arranged buy had nothing to do with him. He argues that this testimony had very little probative value, likely caused him unfair prejudice, and was misleading to the jury.

**{¶71}** Prior to trial, appellant made a motion in limine, arguing in part that the state should be prohibited from presenting testimony regarding the controlled drug buy from Young. (Tr. 8-9). The trial court stated that the officers would be able to testify as to why they did what they did, subject to objection by appellant. (Tr. 12).

**{¶72}** But when Detective Hanlin testified regarding the controlled drug buy and the CI, appellant never objected. The denial of a motion in limine does not

preserve an alleged error for review if the party fails to renew his or her objection during trial. *State v. Hill* (1996), 75 Ohio St.3d 195, 202-203. Appellant failed to preserve this issue for our review by failing to object to the testimony during trial. Consequently, we can only conduct a plain error review of this issue. Also, this could very well have been trial strategy on behalf of appellant's trial counsel.

{¶73} As will be seen in the discussion of appellant's fourth assignment of error, given the evidence that exists to support appellant's convictions, whether or not the jury heard the testimony regarding the CI and the controlled drug buy from Young likely would have had no impact on its determination as to appellant's guilt. Thus, there is no plain error.

{¶74} Accordingly, appellant's third assignment of error is without merit.

{¶75} Appellant's fourth assignment of error states:

{¶76} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶77} Appellant contends here that his convictions are both unsupported by sufficient evidence and are against the manifest weight of the evidence. He offers one argument in support of both contentions. Appellant argues that Young's testimony was not credible. He points out that his fingerprints were not on either gun and Detective Hanlin did not see him with any guns or drugs in his hand. In sum, appellant asserts that the only witness to testify that he exercised control over the guns and drugs was Young who is a convicted drug trafficker and who admitted to using and selling crack on the day in question.

{¶78} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether,

after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith,* 80 Ohio St.3d at 113.

**{¶79}** Appellant was convicted of two counts of having a weapon under disability in violation of R.C. 2923.13(A)(3), which states:

**{¶80}** "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

**{¶81}** "* * *

**{¶82}** "(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

**{¶83}** In order to "have" a firearm within the meaning of R.C. 2923.13, the defendant must actually or constructively possess the weapon. *State v. Simpson,* 7th Dist No. 01-CO-13, 2002-Ohio-1565, at ¶52. Actual possession of the weapon simply requires physical control or ownership at some point in time. *Haslam*, 7th Dist. No. 08-MO-3, at ¶41.

**{¶84}** Additionally, appellant was convicted of possession of drugs in violation of 2925.11(A)(C)(4)(a), which provides:

**{¶85}** "(A) No person shall knowingly obtain, possess, or use a controlled substance.

**{¶86}** "* * *

**{¶87}** "(C) Whoever violates division (A) of this section is guilty of one of the following:

**{¶88}** "* * *

**{¶89}** "(4) If the drug involved in the violation is cocaine or a compound,

mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

**{¶90}** "(a) Except as otherwise provided * * * possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender."

**{¶91}** We must consider the evidence to determine whether it sufficiently supports appellant's convictions.

**{¶92}** Young was the first witness to testify. Young admitted that she was in prison for 12 months on drug trafficking and possession charges that resulted from the search of her home and the controlled drug buy. (Tr. 181, 200). She also admitted to a prior possession of crack cocaine conviction. (Tr. 200). And she admitted that she used cocaine for six months and sold it to support her habit. (Tr. 199). Young further testified that on November 13, 2008, she sold crack cocaine from the alley behind her house. (Tr. 198).

**{¶93}** As to the search of her home, Young testified that on November 13, she was at home with appellant, her brother Darnell Young, and her cousin Michael Curenton. (Tr. 185-86). She stated that her brother opened the door and yelled, "Police." (Tr. 186). According to Young, the police entered her house through the kitchen, went into the dining room, and then into the living room where everyone was located. (Tr. 186-87). Upon the officers' orders, Young, Darnell, and Curenton got onto the ground. (Tr. 187-89). At the time, appellant was sitting on the couch. (Tr. 188). Neither Darnell nor Curenton was near appellant. (Tr. 189).

**{¶94}** Young testified that earlier that day she saw appellant with two guns in his pants pocket while he was at her house. (Tr. 191-93). She stated that as the police were coming through her door, she saw appellant put one gun, which she described as the black gun, under the couch cushion. (Tr. 193-94). Young testified that she then saw appellant put the other gun, which she described as the silver gun, on the side of the couch cushion. (Tr. 194). Young identified the guns seized from

the couch as the guns she saw appellant with. (Tr. 195-96). Additionally, Young testified that the guns did not belong to her. (Tr. 202).

**{¶95}** Young also testified that she saw appellant with crack cocaine on the day in question. (Tr. 196). She stated that the crack was "tied up," meaning it was in single little baggies. (Tr. 196). The prosecutor showed Young the alleged crack cocaine with which appellant was charged with possessing. (State Ex. 6). She stated that this was the type of crack cocaine appellant had on the day in question. (Tr. 204). Young then testified, as a person who has used crack cocaine, that the substance in State's Exhibit 6 appeared to be crack cocaine. (Tr. 205).

**{¶96}** Young testified that she did not receive any kind of consideration or promises from the state in exchange for testifying against appellant. (Tr. 202). On cross examination, however, Young admitted that she had been facing a potential three-year sentence and only received one year. (Tr. 209).

**{¶97}** Officer Jeffrey Kamerer, who was part of the search warrant team, was the next witness. Officer Kamerer testified that as the team entered Young's house, Detective Hanlin ordered appellant to the ground, but appellant refused to cooperate. (Tr. 232). He stated that appellant was standing by the edge of the couch and then sat down. (Tr. 232). He stated that no one else was near appellant. (Tr. 234).

**{¶98}** Officer Kamerer testified that once all of the occupants were handcuffed and removed from the house, he searched the living room with Detective Hanlin. (Tr. 235). He stated that he lifted up the couch cushions and found the Taurus handgun. (Tr. 236). He further stated that he found five individually-wrapped baggies of crack along with the Raven Arms revolver shoved down inside the couch. (Tr. 236-38).

**{¶99}** On cross examination, Officer Kamerer testified that he was once involved with a case where he charged an individual with having crack cocaine and the substance turned out to be chemically different from crack cocaine. (Tr. 246). He stated that it took testing by BCI to determine that the substance was not crack cocaine. (Tr. 246-47).

**{¶100}** Detective Hanlin also testified regarding the search of Young's house.

He began his testimony by explaining how the search came to be and the controlled drug buy with the CI as detailed in assignment of error number three.

{¶101} Detective Hanlin next testified about the execution of the warrant. He stated that when he first saw appellant, appellant was standing directly in front of the couch as if he had just stood up. (Tr. 322). Detective Hanlin stated that he ordered appellant to the ground, but appellant refused to comply. (Tr. 323). Instead, appellant fell backwards onto the couch and at the same time stuck his hand down in between the cushions and the back of the couch. (Tr. 323). Detective Hanlin then ordered appellant to show his hands. (Tr. 323). Appellant refused to do so and kept his hand down in the couch. (Tr. 323). Detective Hanlin then ordered appellant to get on his stomach, and appellant eventually complied. (Tr. 324). Detective Hanlin handcuffed appellant and he was taken outside. (Tr. 324).

{¶102} Detective Hanlin stated that once all of the occupants of the house were taken outside, the police began their search. (Tr. 325). He stated that Officer Kamerer lifted the couch cushions where appellant had been sitting and found crack cocaine, a black Magnum, and a .25 Raven. (Tr. 331-32, 336). He also stated that additional crack cocaine was found behind the couch and somewhat underneath it, as if it had fallen between the couch's springs and backrest. (Tr. 332). In total, there were ten packages of crack cocaine. (Tr. 333). Detective Hanlin testified that the Raven was found in the exact location where appellant had stuck his hand in the couch. (Tr. 332-33). Additionally, he stated that no one else was near the couch where the drugs and guns were found. (Tr. 392).

{¶103} As to the two guns, Detective Hanlin stated that they were loaded when they were found in the couch. (Tr. 344). Later, Detective Hanlin test fired them and found them both operational. (Tr. 346).

{¶104} Detective Hanlin testified that a gun case was found in Young's bedroom. (Tr. 369). But he stated that the gun case was nowhere near where the guns were found. (Tr. 389-90). Detective Hanlin also testified that there was no physical evidence linking appellant to the guns. (Tr. 372).

**{¶105}** Detective Hanlin also testified regarding appellant's criminal history. He identified the sentencing entry whereby appellant was previously convicted of possession of cocaine, a fifth-degree felony, and possession of crack cocaine, a fourth-degree felony. (Tr. 349-50).

**{¶106}** Next, Detective Hanlin testified regarding the crack cocaine that was found. As discussed in detail above, Detective Hanlin first testified about his experience in identifying crack cocaine. He stated that based on his experience, he was able to visually identify the seized substance as crack cocaine. (Tr. 351). He then testified that he performed the "color indication" test twice, on the night in question and on the day of trial in preparation for his testimony. (Tr. 353). Detective Hanlin testified that on both tests, he got a positive result indicating that the seized substance was crack cocaine. (Tr. 354, 355). He stated that in eight years of testing cocaine on an almost daily basis, he never received a false positive for cocaine or crack cocaine. (Tr. 354). However, he did have one false positive where a prescription medication tested positive for methamphetamine. (Tr. 354).

**{¶107}** Finally, Detective Hanlin testified regarding a letter he received from appellant. In the letter, appellant stated that he was writing in the hopes of being released from jail in order to attend his daughter's birthday party. (Tr. 360). Appellant further stated in the letter, "if you can help me * * * *, I know for a fact I can help you." (Tr. 360). Appellant also stated in the letter that he wanted to work for Detective Hanlin in "bringing the whole city down." (Tr. 360).

**{¶108}** First, we will address appellant's possession of drugs conviction.

**{¶109}** In order to convict appellant of possession of drugs, the state had to prove that appellant (1) knowingly (2) obtained, possessed, or used (3) crack cocaine.

**{¶110}** The evidence supports appellant's conviction. Young testified that she saw appellant with crack cocaine at her house on the day in question. And Detective Hanlin stated the crack cocaine was found with the guns under the couch cushions where appellant had been seated and also under the couch as if it had

fallen through. Furthermore, Detective Hanlin expressed his expert opinion that the substance in question was crack cocaine and Young expressed her opinion, as a lay witness who was very familiar with crack cocaine, that the substance in question was crack cocaine.

{¶111} Next, we must examine appellant's convictions for having a weapon under disability. Here the state had to prove that appellant (1) knowingly (2) acquired, had, carried, or used a firearm and that (3) appellant had a prior conviction involving the illegal possession of a drug of abuse.

{¶112} The evidence as to both counts is substantially similar and is sufficient to support appellant's convictions.

{¶113} Young testified that she saw appellant with both guns in his pants pocket at her house on the day in question. She further stated that as the police entered her house, she witnessed appellant hide one of the guns under the couch cushion. And she stated that once the police entered her living room, she saw appellant hide the other gun in her couch. Furthermore, Detective Hanlin testified that he saw appellant shove his hand between the couch's backrest and cushion. He further testified that the spot where appellant's hand went into the couch is where he later located one of the guns. And he testified that he located the other gun under the cushion where appellant sat down. Finally, Detective Hanlin testified that appellant has a prior felony conviction for possession of cocaine and a prior felony conviction for possession of crack cocaine.

{¶114} Construing the evidence in the light most favorable to the prosecution, as we are required to do, it is clear that appellant knowingly possessed both guns while under a disability.

{¶115} Next, we will address appellant's manifest weight argument.

{¶116} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage

of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

{¶117} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

{¶118} In considering a manifest weight argument, we must also consider the testimony of appellant's witness, Detective Thomas Ellis. Detective Ellis prepared the affidavit for the search warrant and was a member of the search warrant team. He testified that there was no mention of appellant in the search warrant. (Tr. 419). Further, Detective Ellis stated that no one had given him any evidence of appellant being present in Young's home during the previous controlled drug buy. (Tr. 419-20).

{¶119} Appellant argues that Young's testimony was not credible given that she is a convicted drug trafficker and admitted crack cocaine user. He asserts that she was the only one who allegedly saw him with the guns and drugs.

{¶120} Appellant is correct as to Young's credentials, she admitted to both selling and using crack cocaine. However, these facts were things for the jury to consider when weighing Young's credibility. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finders' determination of witnesses' credibility. *State v. Wright,* 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.

{¶121} Furthermore, although Detective Hanlin did not actually see appellant

holding the guns or the crack, his testimony gave circumstantial evidence that appellant possessed them. Detective Hanlin testified that when he spotted appellant it appeared as though appellant had just stood up from the couch. He stated that even though he ordered appellant to the ground and to show his hands, appellant did not initially comply. Instead, appellant fell back on the couch and shoved his hand between the cushions. One of the guns was found in the exact location where appellant had put his hand. And the other gun and half of the crack were found under the cushion where appellant had been seated. The remaining crack was found under the couch as if it had fallen through. Hence, even though Detective Hanlin did not see appellant holding any of the items in question, from his testimony the jury could have concluded that appellant possessed them and hid them in the couch.

{¶122} Appellant also argues that no physical evidence linked him to the guns or drugs. But there is no requirement that the state must use physical evidence to link appellant to these items. The testimony of Young and Detective Hanlin was enough so that the jury could reasonably conclude that appellant possessed both the guns and the drugs.

{¶123} Finally, the state admitted that appellant was not initially a suspect in the search warrant aimed at Young's house. However, once the police entered Young's house, saw appellant, and located the drugs and guns that appeared to be in his possession, appellant then became a suspect. The fact that police did not initially suspect appellant was involved in any drug activity at Young's house does not contradict what they found when they searched the house.

{¶124} Based on the above the jury's verdict was not against the manifest weight of the evidence.

{¶125} Accordingly, appellant's fourth assignment of error is without merit.

{¶126} For the reasons stated above, appellant's conviction for drug possession is affirmed. Appellant's convictions for having a weapon under disability are reversed. The case is remanded to the trial court for a new sentencing hearing at which the state must elect which allied offense it will pursue against appellant. Also

on remand, the trial court shall merge the two weapons offenses for purposes of sentencing. The determination of appellant's guilt for committing allied offenses remains intact per *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, at ¶27.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.