[Cite as *State v. Clemons*, 2011-Ohio-1177.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   10 BE 7 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| DAVID FLOYD CLEMONS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas Court,
                              Case No. 09CR13.


JUDGMENT:                     Affirmed in part; Reversed in part; Remanded.


APPEARANCES:
For Plaintiff-Appellee:        Attorney Thomas Hampton
                               Special Prosecuting Attorney
                               P.O. Box 310
                               160 East Main Street
                               Barnesville, Ohio  43713

For Defendant-Appellant:       Attorney Timothy Young
                               Ohio State Pubic Defender
                               Attorney Peter Galyardt
                               Assistant State Public Defender
                               250 East Broad Street, Suite 1400
                               Columbus, Ohio  43215


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  March 9, 2011

VUKOVICH, J.

¶{1}  Defendant-appellant David Floyd Clemons appeals from two rape convictions and eight unlawful sexual conduct with a minor convictions, which were entered in the Belmont County Common Pleas Court after a jury trial.  Appellant argues that he should not have been tried and convicted for third-degree felony unlawful sexual conduct with a minor where the offense would have only constituted a fourth-degree felony at the time of commission.  This argument has merit as a defendant must be charged with the version of the offense in effect at the time of the crime's commission.  Appellant's eight convictions of unlawful sexual conduct with a minor are hereby amended to eight convictions for corruption of a minor, and this case is remanded so that appellant shall be resentenced under the lower degree of felony.

¶{2}  Appellant also contends that only five of these eight counts were specifically set forth in the teenage victim's testimony.  He urges that the other three counts were set forth by mere estimate or inference in violation of his Due Process and Double Jeopardy rights.  However, besides detailing five specific incidents, the victim stated that they had sexual intercourse "way over" ten times during a four-month period in 1998 and specified that they had sex on the couch in the living room of appellant's home more than ten times.  This is a definite minimum, as opposed to an estimate of a maximum number of times.  As such, appellant's request that we dismiss three counts is overruled.

¶{3}  Regarding his suppression motion, appellant urges that his private conversation with his wife in the police interrogation room was improperly recorded in violation of the Fourth Amendment and Ohio's electronic surveillance laws.  Under the totality of the facts and circumstances, the trial court could rationally find that appellant had no reasonable expectation of privacy regarding his conversation in the police interrogation room after his arrest.

¶{4}  Finally, appellant takes issue with the content of his recorded interview, which was not redacted even though it contained the detective's accusations that

appellant molested other individuals. He states that there was not substantial proof that these other acts occurred. However, appellant did not object to playing the jury the entire interview. We do not find plain error or reversible ineffective assistance of counsel.

STATEMENT OF THE CASE

¶{5} In 2009, appellant was indicted on eight counts of unlawful sexual conduct with a minor for his 1998 acts of sexual conduct with his daughter's friend. See R.C. 2907.04(A). The victim was thirteen and fourteen at the time of the relationship. Appellant was also indicted on two counts of raping his daughter, who was as young as four at the time of the first incident. See R.C. 2907.02(A)(1)(b) (constituting the offense of rape of a child under the age of ten). It was alleged that these rapes took place between January 1, 1994 and December 31, 1996.

¶{6} Appellant filed a motion to suppress statements he made to his wife in the police interrogation room, which had been recorded without his knowledge. The court denied his motion. Thereafter, a jury found appellant guilty as charged.

¶{7} In a March 1, 2010 entry, the court sentenced appellant to three years on each of the first eight counts and ten to twenty-five years on the two rape counts all to run consecutively, for a total sentence of forty-four to seventy-four years in prison. The within appeal followed.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

¶{8} Appellant's first two assignments of error provide:

¶{9} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT CONVICTED DAVID CLEMONS OF THIRD-DEGREE FELONIES FOR VIOLATION OF R.C. 2907.04(A)(B)(3) AND SENTENCED MR. CLEMONS TO CONSECUTIVE THREE-YEAR SENTENCES. BOTH THE CONVICTIONS AND SENTENCES ARE CONTRARY TO LAW UNDER THE VERSION OF R.C. 2907.04 THAT WAS EFFECTIVE IN 1998, THE DATE THAT THE OFFENSES WERE COMMITTED."

¶{10} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT CONVICTED DAVID CLEMONS OF EIGHT COUNTS OF UNLAWFUL SEXUAL CONDUCT WITH A MINOR UNDER POST-2000 AMENDMENT VERSION OF R.C. 2907.02(A)(B)(3) IN VIOLATION OF THE EX POST FACTO CLAUSE OF THE

UNITED STATES CONSTITUTION AND THE RETROACTIVITY CLAUSE OF THE OHIO CONSTITUTION."

¶{11} Appellant was convicted of eight counts of unlawful sexual conduct with a minor. See R.C. 2907.04(B). The elements of this offense exist when a person who is eighteen years of age or older engages in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard. R.C. 2907.04(A). The offenses were indicted as third degree felonies because appellant, who was in his mid-thirties, was ten or more years older than the victim. See R.C. 2907.04(B)(3). A felony of the third degree is subject to a maximum sentence of five years in prison. See R.C. 2929.14(A)(3). Appellant was sentenced to three years on each of the eight counts to run consecutively.

¶{12} However, this version of R.C. 2907.04 was not effective until October 17, 2000. Prior thereto, R.C. 2907.04 labeled this same conduct the offense of corruption of a minor. The highest degree of this offense was a fourth degree felony. R.C. 2907.04(B) (if the offender was more than four years older than the victim). A fourth degree felony is subject to a maximum sentence of only eighteen months in prison. See R.C. 2929.14(A)(4).

¶{13} The indictment alleged that the eight counts of unlawful sexual conduct occurred in 1998, and the trial testimony confirmed this time frame. Accordingly, if appellant had been charged and convicted with the statute in effect at the time of the offenses, the convictions would be fourth degree instead of third degree felonies.

¶{14} In his first assignment of error, appellant thus argues that the amended version applies prospectively only and his sentence to a third-degree felony was contrary to law. In his second assignment, he argues that imposing the elevated degree of felony upon him and the resulting increased punishment, violated the constitutional bars on ex post facto and retroactive laws.

¶{15} Appellant did not raise this issue below, and thus we review for plain error. See Crim.R. 52(B). A party asserting plain error bears the burden of showing that: (1) an error occurred; (2) the error was obvious; and (3) the error affected the outcome of the trial. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶378; Crim.R.

52(B).  The recognition of plain-error review can only be done under exceptional circumstances in order to prevent a manifest miscarriage of justice.  *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, ¶6, citing *State v. Long* (1978), 53 Ohio St.2d 91.  Moreover, counsel can be considered to have rendered ineffective assistance where there was deficient performance in the failure to object to a matter and the result of the proceeding would have been different but for that failure.  See *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, 142.  Notably, the state concedes that plain error exists and agrees that we should remand for resentencing.

¶{16}  It is well-established that "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime after its commission, or which deprives one charged with the crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." *Dobbert v. Florida* (1977), 432 U.S. 282, 292.  The Ohio legislature is constitutionally prohibited from passing retroactive laws that, when applied, act to impair vested rights.  Section 28, Article II, Ohio Constitution.

¶{17}  In Ohio, there are two potential steps utilized to determine whether a statute must be applied prospectively only.  First, a statute is presumed to apply prospectively unless expressly made retroactive.  R.C. 1.48.  As such, a statute does not apply retroactively unless the court finds a clearly expressed legislative intent to do so.  *State v. Cook* (1998), 83 Ohio St.3d 404, 410.  If the code is silent, then the version in effect at the time of the offense applies.  *State v. Williams*, 103 Ohio St. 3d 112, 2004-Ohio-4747, ¶9 (remanding for new sentencing hearing where court must choose from sentencing options available at the time of the offense).  In such case, the court does not even proceed to the second step in the retroactivity analysis, whether the statute is substantive as opposed to remedial.  *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, ¶14.  Here, there is no clear legislative intent to make the amended degree of offense apply retroactively.  See R.C. 2907.04.  Thus, we need proceed no further and must find that appellant could only be convicted of the prior offense of corruption of a minor, which was a fourth degree felony.

**¶{18}** In any event, "[r]etroactive changes in the measure of punishment are impermissibly ex post facto if they subject a defendant to a more severe sentence than was available at the time of the offense." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶29. Thus, elevation of the degree of offense from a fourth degree felony to a third degree felony is substantive as the punishment is more burdensome. See *Dobbert*, 432 U.S. at 292; *Beazell v. Ohio* (1925), 269 U.S. 167, 169 (makes punishment more burdensome after crime's commission); *Van Fossen v. Babcock Wilcox Co.* (1988), 36 Ohio St.3d 100, 107 (laws relating to procedures are remedial; among other examples, laws imposing additional or new burdens are substantive). Retroactive application of the 2000 version of R.C. 2907.04 would thus violate Ohio's retroactivity bar and the federal prohibition on ex post facto laws. See id.

**¶{19}** In conclusion, a plain and obvious error occurred in charging appellant under the version of a prospective and substantive criminal statute that was enacted after the offenses took place. The result of the proceedings would clearly have been different had appellant been charged with the proper version of the statute. See *State v. Hancock*, 7th Dist. No. 09JE30, 2010-Ohio-4854, ¶55. As such, these assignments of error have merit. Appellant's eight convictions for third degree felony unlawful sexual contact with a minor are all amended to fourth degree felony corruption of a minor convictions, and the case is remanded for resentencing.

ASSIGNMENT OF ERROR NUMBER THREE

**¶{20}** Appellant's third assignment of error states:

**¶{21}** "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT CONVICTED DAVID CLEMONS BASED UPON MULTIPLE, IDENTICAL, AND UNDIFFERENTIATED COUNTS OF A SINGLE OFFENSE, DENYING MR. CLEMONS DUE PROCESS OF LAW AND VIOLATING THE DOUBLE JEOPARDY CLAUSE."

**¶{22}** The victim, who was twenty-five at the time of her testimony, explained that she became friends with appellant's daughter and was frequently in appellant's house during the summer of 1998, which was the summer she turned fourteen. (Tr. 330). She stated that he gained her trust as a father-figure, which she had been lacking. (Tr. 332-333). He encouraged her to call him dad. (Tr. 333). She testified

that the first improper encounter occurred in June when he sat her on his lap and rubbed her vaginal area on the outside of her clothing. (Tr. 335-337). She stated that every day they went a little further. She testified to the first time he touched her vagina under her clothing while they were lying on the couch. (Tr. 337).

¶{23} As for sexual conduct, she recalled that the first time they had sexual intercourse was near the end of July after he took naked pictures of her. (Tr. 338-339). This was the only time they had sex in his bedroom. (Tr. 372). She stated that they had anal sex in front of his coffee table while watching pornography when his kids were out of town. (Tr. 342). She testified that they had sex in his pool while his children were present. (Tr. 341, 345, 359). Another time, he picked her up at school when she was sick and they had sex before his children got home from school; she believed this was the only time they had sex after the school year started, and she disclosed this was the last time they had sex. (Tr. 345-346).

¶{24} The prosecutor asked if she had any idea how many times she had sex with appellant, and she stated that she did not. When asked to estimate, she responded, "Way over ten." (Tr. 340). On cross-examination she was asked what the eight counts were based upon, and she responded, "Eight times that he had sex with me." (Tr. 357). It was also elicited that they had sexual intercourse in the living room on the couch more than ten times, sometimes when the children were in their bedrooms. (Tr. 372).

¶{25} The detective's notes indicated that she spent eighteen months with appellant, but she corrected at trial that the time frame was approximately three or four months, starting in June of 1998. (Tr. 353). She denied telling the detective that she had sexual intercourse with appellant on an almost daily basis for eighteen months, stating "I told him that it had happened on almost a daily basis when I stayed there every day." (Tr. 375). On redirect, the victim was asked how many times she had sex with appellant, and she responded, "I honestly cannot give an exact number. It was a lot." The prosecutor reiterated her testimony that it was more than ten times, and she responded affirmatively. (Tr. 381).

¶{26} Appellant was convicted of eight counts of unlawful sexual conduct with a minor regarding this victim. The indictment had set forth these counts in an

undifferentiated manner, meaning the counts were indistinguishable. Appellant argues that it was improper to convict him of multiple, undifferentiated counts where the indictment, the bill of particulars, and the discovery incorporated by reference therein fail to provide specific facts regarding all eight incidents and where the trial testimony also fails to elucidate specific facts regarding each of the eight allegations. He argues that this is a due process and a double jeopardy issue, and asks that three of corruption of a minor convictions be dismissed.

¶{27} Appellant acknowledges sufficient detail for the following acts of sexual conduct: the first time in his bedroom; the time in the pool; anal sex in front of the coffee table while his children were on vacation; and the last time while his children were at school. As aforementioned, appellant overlooked that the victim also specifically testified to having sex on the couch in the living room when his children were in their bedrooms. The question becomes whether the remainder of her testimony sufficiently expressed that appellant engaged in sexual conduct with her an additional three times.[1]

¶{28} The case most cited on this topic hails from the United States Court of Appeals for the Sixth Circuit. *Valentine v. Konteh* (C.A.6, 2005), 395 F.3d 626. In that case, the court examined the due process and double jeopardy implications of convictions based upon multiple, identical, and undifferentiated counts. Valentine was charged with twenty counts of rape and twenty counts of felonious sexual penetration for sexually abusing his eight-year-old step-daughter. Each of the rape counts and each of the penetration counts were identically worded and identified the same approximate ten-month time frame. A bill of particulars offered no further differentiation among the counts and identified the family home as the location of all forty offenses. The victim testified that Valentine forced her to perform fellatio in the living room on "about twenty" occasions, that he digitally penetrated her vagina in the living room on "about fifteen" occasions, and that he anally penetrated her on "about ten" occasions. She also testified "generally" that incidents occurred in her bedroom, in her siblings' bedroom, and in her mother's bedroom. Id. at 629.

---

[1] Appellant also notes that the victim specified instances of vaginal rubbing and states that without allegations of penetration, this would not constitute sexual conduct as required for unlawful sexual conduct with a minor. This topic is further discussed this in the next assignment of error.

**¶{29}** Ohio's Eighth District Court of Appeals reversed five of the penetration convictions based on insufficient evidence. The federal district court for the Northern District of Ohio granted Valentine's writ of habeas corpus on all charges concluding that the indictment was constitutionally insufficient. The Sixth Circuit agreed with the dismissal of nineteen counts of each offense but found the error harmless with respect to one count each of rape and felonious sexual penetration.

**¶{30}** The Circuit court concluded that multiple convictions cannot stand based upon a child's mere estimate as the counts should be anchored to allegations of distinguishable conduct. Id. at 633. Thus, the court found problems with notice, general due process issues of the inability to defend oneself, and double jeopardy concerns as the undifferentiated offenses would not allow the defendant to raise any bar to future prosecutions where it is unclear what conduct constituted each offense. Id. The court noted that the prosecution can cure any failure to differentiate problems at trial, concluding:

**¶{31}** "Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction." *Valentine*, 395 F.3d. at 637.

**¶{32}** Various appellate districts in Ohio cite the law set forth in *Valentine*. This district has stated:

**¶{33}** "Where an indictment does not sufficiently specify the counts against a defendant, and differentiation between multiple counts is not discernible from the trial record, the potential double jeopardy issues would cause the defendant's convictions to be vacated for a failure of due process." *State v. Chaney*, 7th Dist. No. 08MA171, 2010-Ohio-1312, ¶44, 55-56 (but distinguishing *Valentine* and holding that the trial testimony and verdict forms sufficiently differentiated each count).

**¶{34}** Some courts apply *Valentine* to hold that a specific act must eventually be linked with a specific allegation, requiring the victim to testify to specific details of each incident for which the defendant is being convicted. See *State v. Nickel*, 6th Dist. No. OT-09-001, 2009-Ohio-5996, ¶49; *State v. Salahuddin*, 8th Dist. No. 90874, 2009-

Ohio-466, ¶11; *State v. Crawford*, 5th Dist. No. 07CA116, 2008-Ohio-6260, ¶48. The Eighth District reviewed a case where the defendant was indicted on 33 counts of gross sexual imposition. *State v. Hemphill*, 8th Dist. No. 85431, 2005-Ohio-3726. The victim testified that the defendant rubbed her chest "[a]ny chance he got." As for actual numbers or specific testimony, the victim set forth some testimony on the first incident. Regarding other incidents, all that was presented was the victim's affirmative answer to the state's question, "did he touch your breast at least 33 times?" The Eighth District reversed 32 of the counts, concluding that this testimony alone was insufficient to support the other counts, explaining:

**¶{35}** "Although we can appreciate the difficulty of prosecuting a case involving a reticent victim who appears to be unsupported by her family, this cannot lessen the state's burden of proof as to each individual offense. Accordingly, inasmuch as our analysis is governed by the Court's holding in *Valentine*, supra, we cannot accept the numerical estimate which is unconnected to individual, distinguishable incidents. We therefore find that there is an insufficient factual basis for defendant's convictions on these unspecified offenses." Id. at ¶88-89.

**¶{36}** In another case, the Eighth District affirmed convictions that were linked to specific instances of conduct but found that the victim's testimony that the defendant inserted his penis into her vagina "eight, nine times" and that he inserted his finger into her vagina "a good 11 or 12 times" was not sufficient to support other convictions for rape and gross sexual imposition. *State v. Warren*, 168 Ohio App.3d 288, 2006-Ohio-4104, ¶20 (refusing to accept numerical estimates which are unconnected to individual, distinguishable incidents). See, also, *State v. Hilton*, 8th Dist. No. 89220, 2008-Ohio-3010, ¶26-27, 31 36 (finding sufficient facts to differentiate five counts of rape, five counts of gross sexual imposition, and ten counts of kidnapping but reversing eight rape convictions, eight gross sexual imposition convictions, and three kidnapping convictions due to the failure to specifically differentiate factual conduct that constituted those offenses as the victim testified that the abuse usually took place once a week); *State v. Tobin*, 2d Dist. No. 2005CA150, 2007-Ohio-1345, ¶14-18 (holding that a victim's testimony that she was raped "at least four times" and that

gross sexual imposition occurred "ten or more" times did not provide sufficient support for several of the charges in a case involving improper sexual conduct with minors).

¶{37} As appellant acknowledges, specificity as to time or date is not required as these are not elements of the offense. See R.C. 2941.03(E) (an indictment or information is sufficient if it can be understood therefrom that the offense was committed at some time prior to the time of indictment); *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 239 (a certain degree of inexactitude is permissible in a cases of a young child-victim of sex offenses). Moreover, *appellant did not raise the issue of undifferentiated counts below*.

¶{38} Thus, we are asked to review this issue for plain error and for ineffective assistance of counsel (raised in the eighth assignment of error). As previously outlined, plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B); *State v. Barnes* (2002), 94 Ohio St.3d 21, 27 (obvious error affected outcome and results in exceptional circumstances requiring recognition of the error to avoid a manifest miscarriage of justice). Counsel can be considered to have rendered ineffective assistance where there was deficient performance in the failure to object to a matter and the result of the proceeding would have been different but for that failure. See *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, 142.

¶{39} Although we have cited the *Valentine* holding in the past,[2] we ended up distinguishing it. It is also distinguishable here. As the state points out, various pieces of evidence corroborate the inappropriate way appellant acted with this young friend of his daughter. See, e.g., *State v. Morgan*, 12th Dist. Nos. CA2009-07-029, CA2009-08-033, 2010-Ohio-1720, ¶24; *State v. Coles*, 8th Dist. No. 90330, 2008-Ohio-5129 (distinguishing *Valentine* and *Hemphill* based upon corroborating evidence). His

---

[2]Moreover, *Valentine* is not binding on Ohio courts. In fact, it is confusing how the Sixth Circuit allowed only two counts to stand where the victim described more than merely two rooms where the abuse occurred and testified that she was made to engage in three types of sexual conduct: fellatio, vaginal intercourse, and anal intercourse. In addition, it seems that double jeopardy problems should be cured if they arise in the future, not based upon their potential to arise. Finally, as the dissent in Valentine noted, it is the province of the jury to determine if multiple acts occurred where they are estimated as opposed to individually detailed. *Valentine*, 395 F.3d at 641 (Gilman, J., dissenting on this proposition).

younger daughter testified that he usually locked her in the basement when the teenage victim stayed over and that when he once left the door unlocked, she saw them under the covers together on the couch. (Tr. 416). His son also witnessed them lying on the couch together. (Tr. 622). Appellant's girlfriend at the time corroborated that he was inappropriate with the girl on the couch and in public. (Tr. 645).

¶{40} Further distinguishing *Valentine* is the fact that the victim here was thirteen and fourteen during the encounters and was in her mid-twenties at the time of trial, as opposed to the child of tender years at issue in *Valentine*. Insistence that sexual abuse occurred way more than ten times can be considered more accurate from an older victim. It must also be remembered that the victim was relating incidents that occurred twelve years before when she was thirteen years old; thus, it would be fairly hard for her to recall, for instance, what television program was on as appellant had sex with her in his living room (as opposed to how much easier it was for her to remember {in detailing one of the incidents} that appellant had put on pornography just before he placed his penis in her rectum without her consent).

¶{41} Along these lines, the victim did provide some level of detail to go with the over ten times comments. That is, she stated that they had sex over ten times on the couch in the living room at appellant's house. We already had the time frame of the sexual encounters as being during the summer of 1998. Although not as specific as some of the testimony on other counts, we have a general time frame, a location, and a specific piece of furniture to go along with her opinion on the minimum number of times.

¶{42} Also distinguishing this case is that appellant was only charged with eight counts. See *State v. Garrett*, 7th Dist. No. 08BE32, 2010-Ohio-1550, ¶28, 47 (distinguishing *Valentine* by emphasizing in part the significance of the fact that the state could have charged the defendant with more counts). Furthermore, the victim here *did not estimate the total number* as in *Valentine,* where the victim stated "about ten times," which is not a certain minimum number of occurrences but rather is an uncertain maximum. Rather, the victim here insisted that the sexual conduct occurred "way over ten" times and that they had sexual intercourse on the living room couch more than ten times. This merely set a definite minimum number of ten as opposed to

the state relying on an estimate for the maximum and then charging the defendant with that estimated maximum. Thus, the situation in the case at bar is distinguishable from a situation where, for instance, a victim states that the relevant conduct occurred "way over ten times," and the defendant is charged with twelve counts. As aforementioned, appellant was charged with only eight counts.

¶{43} Finally, we note that some of the courts that have reversed for undifferentiated counts seem to employ an analysis with a sufficiency component. *Salahuddin*, 8th Dist. No. 90874 at ¶15 ("the instant case is distinguishable from *Valentine*, supra, as the evidence at trial was sufficient to show numerous incidents of sexual conduct and/or contact."); *Warren*, 168 Ohio App.3d 288 at ¶20 (framing the reversal as being based upon insufficient evidence); *Hemphill*, 8th Dist. No. 85431 at ¶89 ("there is an insufficient factual basis for defendant's convictions on these unspecified offenses"). Sufficiency of the evidence is a legal question dealing with adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. A conviction cannot be reversed on this ground unless the court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. *State v. Goff* (1998), 82 Ohio St.3d 123, 138.

¶{44} Here, a rational person could find beyond a reasonable doubt that appellant engaged in sexual conduct with the victim at least eight times. Moreover, counsel may have strategically decided not to object at a time when the error could have been corrected because he may have tactically deduced that it was better if the jury was not exposed to any more detail about appellant's vile acts. That is, counsel may have thought that it was bad enough that they heard that appellant had intercourse with his daughter's friend in the swimming pool in his backyard while his children were present and that he inserted his penis into the child's rectum without her consent while exposing her to a pornographic movie.

¶{45} Ineffective assistance of counsel and plain error are not apparent. For all of these reasons, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER FOUR</u>

¶{46} Appellant's fourth assignment of error alleges:

¶{47} "THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED DAVID CLEMON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, IT CONVICTED MR. CLEMONS ON ONE OF THE FIVE DIFFERENTIATED INCIDENTS OF SEXUAL ACTIVITY."

¶{48} Both unlawful sexual conduct with a minor and corruption of a minor (appellant's convictions as amended herein) require sexual conduct. See R.C. 2907.04. Sexual conduct is statutorily defined as:

¶{49} "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

¶{50} Appellant notes that besides the testimony on his acts of sexual conduct with the teenage victim, there was also testimony that he rubbed her vaginal area (without testimony of penetration), which only constitutes sexual contact. See R.C. 2907.01(B) (defining sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."). Appellant asks that we ensure that none of the eights convictions have been based upon sexual contact testimony.

¶{51} The testimony involving sexual contact was provided to set the stage and establish the background or sexual escalation in appellant's behavior. There is no indication that any conviction was based upon this part of the victim's testimony. The jury was properly instructed that sexual *conduct* was a required element of the offense, and sexual conduct was properly defined for them. See Jury Instructions at 21-22. As such, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE

¶{52} Appellant's fifth assignment of error contends:

¶{53} "THE TRIAL COURT ERRED WHEN IT DENIED DAVID CLEMON'S MOTION TO SUPPRESS, AND ADMITTED INTO EVIDENCE, THE PORTION OF MR. CLEMON'S VOLUNTARY STATEMENT BETWEEN HIM AND HIS WIFE THAT

WAS MADE IN PRIVATE AT THE SHERIFF'S OFFICE AND UNBEKNOWNST TO THEM, CAPTURED ON VIDEOTAPE."

**¶{54}** Appellant voluntarily submitted to an interview in the police interrogation room. He was advised of his *Miranda* rights. (Supp.Tr. 8-9). The room contained a two-way mirror through which observers could view and hear the interview. The glass was not being used at the time due to lighting issues, but video and audio were transmitted to a television and a computer in the room behind the glass. (Supp.Tr.21, 31-33). The video camera, which was disguised as a power socket, recorded all conversations in this room, and the subjects were only advised of this fact if they asked. (Supp.Tr. 10-11, 19). Since he did not ask, appellant was not told that the interview was being recorded. The detective opined that in today's society, most people would assume their conversations are being monitored in such a situation. (Supp.Tr. 25).

**¶{55}** After the interview, appellant was advised that he was being placed under arrest, and he was frisked. (Supp.Tr. 15). Appellant then asked to see his wife, with whom he had asked to speak earlier as well. The detective agreed to give them five minutes to speak. (Supp.Tr. 28). Before closing the door and leaving them alone, the detective told them to bang on the door loud if they needed anything. Appellant's conversation with his wife was then recorded. In pertinent part, appellant stated to his wife, "I'm caught, baby…I'm caught…I'm caught."

**¶{56}** Appellant moved to suppress this statement on the grounds of the spousal privilege statute, R.C. 2317.02(B). The trial court overruled his motion on this ground and disposed of other grounds, which the court raised sua sponte, such as search and seizure and electronic surveillance laws.

**¶{57}** On appeal, appellant admits that the court made the correct decision by finding that the recording was not barred by the spousal privilege. Instead, he argues that the failure to suppress this statement violated his Fourth Amendment rights against unreasonable searches and seizures and his rights under the electronic surveillance statutes. He also states that the court erroneously placed the burden on him. See *State v. Childs* (2000), 88 Ohio St.3d 558, 567 (where Court stated that the burden is on the state in Fourth Amendment cases where communications are seized

without warrant, but placed the burden on the defendant where the electronic surveillance statute was alleged to be violated by non-state actor because the Fourth Amendment was not implicated).

¶{58} The state contends that appellant waived consideration of the two grounds he now raises because he did not raise them in his suppression motion. The state alternatively argues that the statement to appellant's wife need not be suppressed because appellant had neither an objective nor a subjective expectation of privacy.

¶{59} An appeal of a suppression issue presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. As the trier of fact, the trial court occupies the best position to resolve factual questions and evaluate the credibility of witnesses. Id. Hence, the reviewing court accepts the trial court's findings of fact if they are supported by competent, credible evidence. Id. The appellate court then independently determines whether the facts satisfy the applicable legal standard. Id.

¶{60} The electronic surveillance statutes provide that if an oral communication is uttered by a person "exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation," then the interception of that communication is prohibited by statute unless there exists certain exceptions which are not applicable here (such as when there is consent by a participant to the conversation). See R.C. 2933.51(B); 2933.52(A), (B). A violation of this prohibition results in the content being excluded from evidence in any trial or hearing before a court. R.C. 2933.62(A). Thus, the electronic surveillance statutes do not require exclusion of the statement if appellant did not exhibit an expectation that the communication was not subject to interception or if the circumstances do not justify such an expectation.

¶{61} Under general Fourth Amendment principles, a communication cannot be intercepted if there is an actual and justifiable expectation of privacy from the eye and ear of the government. *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, ¶13. Hence, an individual's subjective expectation of privacy is protected by the Fourth Amendment if that expectation is reasonable and justifiable. Id. at ¶14.

¶{62} The state relies upon two cases dealing with the recording of conversations in police cars. The Ninth District has held that a driver who was *Mirandized* and placed in the back of a police car does not have a reasonable expectation of privacy in his statements to his mother on the telephone or to his passenger. *State v. Ingram*, 9th Dist. No. 10CA22-M, 2010-Ohio-3546, ¶17. The Second District has stated that detainees in a police car have no reasonable expectation of privacy and thus found no Fourth Amendment or electronic surveillance statute violations. *State v. Wynter* (Mar. 13, 1998), 2d Dist. No. 97CA36. That court quoted a federal decision as follows:

¶{63} "A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth, where a person should be able to reasonably expect that his conversation will not be monitored. In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society." (Citation omitted.) Id., citing *U.S. v. Clark* (C.A.8, 1994), 22 F.3d 799, 801-802.

¶{64} Both parties state that whether an arrestee has a reasonable expectation of privacy in a police interrogation room is a question of first impression in this state. Appellant cites cases from other states regarding the recording of conversations in the police interrogation room when no participant to the conversation knows they are being recorded. He cites cases where the court found there was a reasonable expectation of privacy in a police interrogation room under the specific facts of the case. See, .e.g., *Cox v. State* (Fla.App. 2010), 26 So.3d 666, 672; *State v. Munn* (Tenn. 2001) 56 S.W.3d 486, 497; *State v. Howard* (Del. 1998), 728 A.2d 1178, 1184; *State v. Calhoun* (Fla. 1985), 479 So.2d 241, 2443-245 (conversation between spouses in police interview room suppressed); *North v. Superior Ct. of Riverside Cty.* (Cal. 1972), 8 Cal.3d 301, 312.

¶{65} In *Cox*, the Florida Supreme Court stated that most conversations in a police interrogation room need not be suppressed. *Cox*, 26 So.3d at 676. Still, the court suppressed the conversation between the defendant and his co-defendant because a detective repeatedly assured the defendant that there was no recording occurring, because the co-defendant was acting as an agent for the state, and because the defendant had just invoked his right to counsel. Id. In *Munn*, a closed-door conversation was suppressed where the suspect requested that he be permitted to speak to his mother alone and where the officers turned off a visible recorder but then recorded the conversation on a hidden recorder. *Munn*, 56 S.W.3d at 495 (also finding there was no justifiable purpose to maintain security).

¶{66} Turning off a visible recorder on a suspect's request but leaving on a hidden recorder as occurred in *Munn* is active deception, and the officer in *Cox* directly lied. These situations are distinguishable from the one here where nothing was mentioned about a recording. The lack of trickery here distinguishes this case.

¶{67} California's *North* court suppressed a prisoner's closed-door conversation with his wife, which took place in an officer's office. *North*, 8 Cal.3d at 309, 311-312. The court focused on the implicit indications of privacy and the special relationship between a husband and wife. Id. However, California evidence rules prohibit testimony by eavesdroppers as to communications between spouses. Id. at 310. By acknowledging that Ohio's spousal privilege does not apply here in part because the spouse was not testifying, appellant recognizes that California case law is inherently distinguishable on this topic. Moreover, the *North* court recognized that jail and prison inmates generally have no expectation of privacy, but found that the conversation occurred in a private office and the defendant was lulled into thinking the conversation was private. Id. at 311. Finally, the *North* court consisted of six justices, and only three signed the portion of the opinion suppressing the conversation. (Burke, J., writing justice); (Tobriner, J., dissenting to a different portion of the opinion and concurring in the suppression of the conversation portion; Peters, J., concurring with Tobriner). Three dissented to the decision regarding suppression of the conversation. (Wright, J., dissenting to the decision regarding suppression of the conversation, with

McComb, J., concurring in this dissent) (Sullivan, J., dissenting to confession decision). As such, *North* is of questionable precedential value in its own state.

¶{68} As appellant recognizes, there are many out-of-state cases where courts have found that there was *no* reasonable expectation of privacy in a police interrogation room. See, e.g., *Mai v. Horel* (N.D. Cal. 2009), 2009 U.S. Dist. Lexis 19322, *7; *Pestano v. State* (Fla. 2008), 980 So.2d 1200, 1202; *Dickerson v. State* (2008), 292 Ga. App. 775, 779; *Belmer v. Commonwealth* (2001), 36 Va. App. 448, 461; *State v. Strohl* (1999), 255 Neb. 918, 925-926; *Larzerlere v. State* (Fla. 1996), 676 So.2d 394, 405; *Ahmad v. Superior Ct.* (1989), 215 Cal.App.3d 528, 536; *In re Joseph A.* (1973), 30 Cal.App. 3d 880, 886. See, also, *State v. Owens* (S.D. 2002), 643 N.W.2d 635, 754 (finding no reasonable expectation of privacy of detainee in telephone conversation with mother from police interrogation room due to court's general security concerns).

¶{69} Finally, although appellant believes a statement by the Ohio Supreme Court supports his position, the statement actually seems contrary to his position. The Court stated: "In the instant case, there is at least some question as to whether appellant and his wife could have a [reasonable expectation of privacy] in a police interrogation room equipped with two-way mirrors." *State v. Brewer* (1989), 48 Ohio St.3d 50, 57 (and then proceeding to state that the wife was informed of the conversation and regardless, the conversation was never introduced at trial). This suggests that two-way mirrors are an indication that monitoring is occurring.

¶{70} We turn now to the relevant facts that weigh on either side of the issue. Appellant urges that the contents of the recorded conversation (stating that he was "caught") show that he had a subjective expectation that he was alone. The state responds that appellant failed to set forth any evidence of what his subjective belief was and notes that appellant whispered the incriminating portion of the conversation as if he knew someone were listening. However, subjective belief is irrelevant if a reasonable person would not have believed their conversation was subject to monitoring.

¶{71} As for the objective reasonableness of any privacy expectation, appellant notes that the camera was hidden, the door was closed, and the detective gave the

impression that the communication would be private by closing the door and saying they should bang on the door loudly if they needed anything.  He points out that he was alone with his wife and that spousal communications (although not privileged from a third-party's recitation) are considered important.

¶{72} Nevertheless, appellant had been *Mirandized*.  He was interrogated for hours.  He was in an interrogation room in a police station.  The room had a mirror that a reasonable person would anticipate concealed a room where observers could both see and hear the proceedings within the room.  That the glass was not being used for observation (a fact disclosed at the suppression hearing) was irrelevant to what an objective person would have perceived from within the room.

¶{73} Appellant asked to speak to his wife, but he was not permitted to do so until after the interview.  As appellant acknowledges, the spousal privilege deals with the spouse's testimony, not the testimony of listeners.  The detective asked more than once what appellant was going to say to his wife, which suggested to appellant that there was police interest in the content of the conversation.

¶{74} Moreover, appellant had been advised that he was under arrest before his wife was allowed to enter the room.  Thus, he was in police custody at the time his conversation with his wife was recorded.  As the detective testified, there are security concerns once a suspect is arrested.  (Supp.Tr. 25-26).  Additionally, advising someone to bang loudly if they need something does not preclude the probability that the conversation is being recorded for later listening.

¶{75} Finally, there is really nothing to distinguish a police interrogation room from conversations in the back of a police car.  Leaving the interrogation room and closing the door is similar to leaving a patrol car and closing the door (or walking away where the subjects can see the officer is too far away to overhear their conversation).  Replacing the language set forth supra from the Second District's block quote of a federal decision, we hold that a police interrogation room "is owned and operated by the state for the express purpose of ferreting out crime."  It is "used as a temporary jail for housing" arrestees.  "The general public has no reason to frequent" a police interrogation room "or to believe that it is a sanctuary for private discussions."  Moreover, "[i]t is not the kind of public place, like a phone booth, where a person

should be able to reasonably expect that his conversation will not be monitored." Permitting police to record statements made by individuals left in a police interrogation room after their arrest "does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society." *Wynter*, 2d Dist. No. 97CA36, citing *Clark*, 22 F.3d at 801-802.

¶{76} Regardless of whether appellant had a burden or whether he met his burden regarding his subjective expectation, the trial court could rationally find that an objective person had no reasonable expectation of privacy under the circumstances existing herein.  This assignment of error is overruled.

<u>ASSIGNMENTS OF ERROR NUMBERS SIX AND SEVEN</u>

¶{77} Appellant's sixth and seventh assignments of error argue:

¶{78} "THE TRIAL COURT COMMITTED PLAIN ERROR AND DENIED DAVID CLEMONS DUE PROCESS OF LAW WHEN IT ADMITTED HEARSAY, PRIOR-BAD-ACTS CHARACTER TESTIMONY THAT WAS UNFAIRLY PREJUDICIAL."

¶{79} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED HEARSAY TESTIMONIAL STATEMENTS DURING MR. CLEMON'S TRIAL, IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION."

¶{80} Appellant's three-hour police interview was played to the jury.  The only objection appears to be regarding references to a polygraph, which were thus redacted.  (Tr. 443).  Appellant now contests the following other acts evidence referenced in the interview:

¶{81} "DETECTIVE ALLAR:  [Your second of four daughters] went on record about you trying to do things with her when she was a child.

¶{82} "MR. CLEMONS:  What?"  (Tr. 109).  * * *

¶{83} "DETECTIVE ALLAR:  All these people say you did things to them.  Okay.  I did my best to try to get you to admit you got a problem and get you some help.  Your brother [name omitted] I don't put a lot -- I don't put a lot on his word.  But without knowing I was already looking into you, called me when he was in jail to tell me that you molested him, also.  Four other girls back then:  [name omitted], [name omitted].

¶{84} "MR CLEMONS:  Those names don't mean nothing.

¶{85} "DETECTIVE ALLAR:  I'm sure they don't.  It was a very long time ago. Your [other] brother [name omitted] who came to your house drunk and said, 'You ruined my life.  I can't be with a woman because of the things you did with me as a kid.'  This has been going on your whole life.  And it's got to stop now.  It's got to stop now.  You're done.  It's over.  It's over.  It's got to stop now.  Right now, Children's Services are talking to your niece.  And not [name omitted].  We'll be talking to her. They're talking to your wife's little niece who lives out [place omitted].  We're about to list that something happened with her, too.  All these people.  All this on you.  You can either ask for some help, because you need it, or go down the other route.  All these people who, when I called and approached and found, hadn't spoke to each other in years."  (Tr. 110-11). * * *

¶{86} "MR. CLEMONS:  And [second daughter], I've never touched [her].

¶{87} "DETECTIVE ALLAR:  [She] said you kept on trying.  She wouldn't let you, and you never pushed.

¶{88} "MR CLEMONS:  Never tried.  Never touched her, ever.

¶{89} "DETECTIVE ALLAR:  That's what she's saying.  That's what most of your kids are saying."  (Tr. 113). * * *

¶{90} "DETECTIVE ALLAR:  * * * And you know what you God damn did to [youngest daughter, who is victim in two rape counts].  You know what happened to all these kids.  * * * I'm thinking how can someone do all this shit and not be the devil? And I meet you, and you're not the devil.  You've got no horns.  You don't have that look, you know, look of evil."  (Tr. 114-115). * * *

¶{91} "DETECTIVE ALLAR:  * * * [Your brother] tells me he did this because of what you did to him.  I'm like okay.  I followed up on it.  I talked to those other people. It happened.  * * * it goes to pattern.  It clicks in with everything else.  Independently, for a long time, you've been hurting people.  And probably didn't want to.  You really don't understand why.  You can't help yourself.  You need to stop.  This needs to stop."  (Tr. 115-116).

¶{92} "DETECTIVE ALLAR:  There's too many people involved in this for this to just be perversion.  There's an illness. (Tr. 122). * * *

¶{93} "DETECTIVE ALLAR:  Do I got everybody?  Do I need to talk to anybody else?"

¶{94} "MR. CLEMONS:  No.

¶{95} "DETECTIVE ALLAR:  Your wife's niece?

¶{96} "MR CLEMONS:  No."  (Tr. 123).  * * *

¶{97} "DETECTIVE ALLAR:  What about your brothers?

¶{98} "MR. CLEMONS:  Well, my brothers, the only thing I can remember is that we was kids and we'd be in the kitchen and sword fighting and all kind of stupid shit like kids do.  And besides that, that was it.  Now the other one [name omitted], yeah, I was mean to him.  I was given the authority to be his caretaker, disciplinarian, even. * * *

¶{99} "DETECTIVE ALLAR: You need to tell me what you did to everybody, okay.  They need it; you need it.  All right.  Because I'm telling you, look at it from my point of view:  All these people -- (Tr. 126-127). * * *

¶{100} "DETECTIVE ALLAR:  Listen, there's too many people out there.  We're not talking about he said, she said thing.  We're saying he said she said she said he said she said he said she said said.  And I'm not done.  We got a lot more people to talk to.  * * * those tears tell me you are legitimately tortured by this shit. * * * And you found yourself doing things.  And it's like, 'This is wrong,' but you couldn't help yourself.  But you know what you are able to do with all these kids?  You didn't let it get anywhere near as bad as what happened to you."

¶{101} "MR. CLEMONS:  No.

¶{102} "DETECTIVE ALLAR:  You stopped it.  But these kids aren't lying.  Stuff happened to them, and we want to get them help.  (Tr. 128-130).  * * *

¶{103} "DETECTIVE ALLAR:  Well, still your brother.  This stuff happened to him.  He's still pissed about it.  You know he is.

¶{104} "MR. CLEMONS:  I was really mean to him."  (Tr. 138).

¶{105} In the sixth assignment of error, appellant states that by failing to redact these portions of the interview, the jury was exposed to prior bad acts evidence in violation of Evid.R. 404(B) and hearsay in violation of Evid.R. 802.  He also argues

that the evidence had minimal probative value and should have been excluded under Evid.R. 403(A).

¶{106} It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court and an evidentiary decision, such as one regarding other acts evidence, will not be reversed absent an abuse of discretion that causes material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶62. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

¶{107} Pursuant to Evid.R. 403(A), evidence must be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Moreover, other acts evidence is not admissible to prove that a person acted in conformity with his character. Evid.R. 404(B). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). A statute similarly provides that if material evidence is admissible regarding "any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59. See, also, *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶19 (evidence must merely "tend to show" a matter enumerated in the rule or statute).

¶{108} It has been stated that there must be substantial proof that the other act occurred. *State v. Lowe* (1994), 69 Ohio St.3d 527, 529. Appellant does not take issue with whether this evidence tends to show one of the enumerated exceptions such as identity, scheme, plan, or system. Rather, appellant argues that substantial proof was not presented that these acts occurred because they were presented through hearsay, i.e. the detective told appellant that he was told that there were other victims of his sexual molestation.

**¶{109}** Under his seventh assignment of error, appellant claims that this other acts evidence was testimonial and thus violated his rights under the Confrontation Clause. The Sixth Amendment's Confrontation Clause only applies to testimonial statements and does not apply to non-testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 68; *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, ¶21. Police interrogations are testimonial as opposed to non-testimonial, unless the purpose is to respond to an on-going emergency. *Davis v. Washington* (2006), 547 U.S. 813, 822; *Crawford*, 541 U.S. at 53, 68; *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, ¶17. If the primary purpose of the statements is the investigation of a past crime for a future legal proceeding, the statements are testimonial. *Davis*, 547 U.S. at 822. The statements made to police in this case about sexual acts with other individuals that occurred years prior are testimonial as opposed to non-testimonial as the primary purpose was to investigate past crimes for potential future proceedings.

**¶{110}** If a statement is testimonial, then the Confrontation Clause requires a showing of both the declarant's unavailability and the defendant's opportunity to have previously cross-examined the declarant. *Crawford*, 541 U.S. at 68 (if the statement is non-testimonial, it is merely subject to the regular admissibility requirements of the hearsay rules). Here, there was no showing of either.

**¶{111}** The jury heard there were allegations that appellant may have engaged in some type of sexual misconduct with his two brothers, his wife's niece, and two named females.[3] However, appellant failed to object at trial. As appellant acknowledges, it is well-established that the failure to object at a time when the problem could have been avoided waives all but plain error. See, e.g., *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶132. Crim.R. 52(B) provides that

---

[3]As for the portion of the interview mentioning that there was an allegation that appellant made an attempt to engage his second daughter in inappropriate activity, this daughter had already testified without objection. She disclosed that appellant made her wear extra-large tank tops with no bra so her breasts could be seen through the sides of her shirt; she connected this with the time period appellant was with the teenage victim, who also made reference to this fact. This daughter also stated that appellant would have her lie on his stomach under a blanket on the couch or curl up next to him when she was a teenager. (Tr. 271). Thus, the references to this daughter's allegations in the interview were irrelevant since she had already testified along these lines without objection. See *State v. Fellows*, 7th Dist. No. 09JE36, 2010-Ohio-2699, ¶23 (prejudice is lacking where the evidence was already heard), citing *State v. Fain* (Aug. 22, 1990), 9th Dist. No. 14578. This eliminated any hearsay or confrontation issues.

"[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The decision to correct plain error is discretionary. Crim.R. 52(B); *State v. Barnes* (2000), 94 Ohio St.3d 21, 27. The court cannot exercise that discretion, however, unless there is an obvious error that affected the outcome of the trial. *State v. Barnes* (2000), 94 Ohio St.3d 21, 27. The plain error doctrine must be implemented "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, syllabus.

¶{112} Appellant also raises ineffective assistance of counsel regarding this issue by way of his eighth assignment of error. Counsel can be considered to have rendered ineffective assistance where there was deficient performance in the failure to object to a matter and there was prejudice, meaning that result of the proceeding would have been different but for that failure. See *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, 142. Debatable trial tactics rarely constitute ineffective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 47. The reviewing court presumes that counsel's strategy falls within the wide range of reasonable assistance. *State v. Thompson* (1987), 33 Ohio St.3d 1, 10.

¶{113} The defense listened to the interview prior to trial. Appellant objected to the references to a polygraph, and these references were redacted from the interview. Appellant did not object to the now-disputed portions of the interview before, during, or after the recording was played to the jury. (Tr. 442-443, 502-514, 666-667). By allowing this tape to be played to jury and admitted into evidence after approving the redaction of the polygraph references, appellant sat on his rights.[4] The waiver doctrine is employed to avoid the strategy of allowing the submission of improper evidence, taking the chance on whether it influences the jury, and then seeking a new trial on appeal if the jury returns a guilty verdict. See *State v. Houseman* (June 29, 2000), 7th Dist. No. 98BA4.

---

[4]This would invoke the waiver doctrine, but not the invited error doctrine. Invited error requires more than mere acquiescence; it requires inducement or affirmative consent to a procedure. *State v. Campbell* (2000), 90 Ohio St.3d 320, 324. Defense counsel did seem to consent to the redacted interview being played. However, the consent was not actually affirmatively made aloud. Thus, we will not rely on the doctrine of invited error to dispose of this issue.

¶{114} Allowing the defendant's interview with police into evidence without objecting can also be a trial tactic used so that the defense can get a defendant's statement in without the need to subject the defendant to the rigors of cross-examination. See *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶88; *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶34 (defendant also avoids having prior convictions used for impeachment). Moreover, not objecting to how the other acts were presented (through the detective's interview questions) may have been a tactic used in order to avoid the state actually bringing in the accusers to testify live. (Once again, he only contests that the other act was proven with substantial evidence; he does not contest that one of the enumerated exceptions applies.)

¶{115} When viewing the prejudicial impact of the detective's statements during the interview, it must first be pointed out that there was much corroboration that appellant acted inappropriately with the teenage victim. That is, multiple witnesses testified to viewing appellant's body pressed against the teenager as if they were lovers on various separate occasions. In addition, the testimony of both victims could be considered compelling.

¶{116} Plus, it was pointed out that appellant's brother was incarcerated for rape, and the detective voiced to appellant that he did not believe much of what this brother had to tell him. The detective also admitted in his testimony that he used standard deceptive techniques during the three-hour interview, such as lying and exaggerating. (Tr. 499). This lessens the prejudicial effect of the statements. It also shows that the statements were not provided to prove the truth of the matter asserted; but rather, to show appellant's response to the officer's claims that he needs help and that his common scheme needs to stop.

¶{117} Moreover, appellant was already being tried for two separate victims, representing two courses of conduct. Thus, in weighing the teenage victim's testimony, the jury had already heard that appellant allegedly raped his own four-year-old daughter on multiple occasions. Likewise, in considering the daughter's testimony to support the rape convictions, the jury had already heard that appellant engaged in various sexual acts with a thirteen-year-old girl while his children were present. This fact diminishes some of the prejudicial impact of the jury hearing that other people may

have accused appellant of sexual improprieties as well.  Finally, the statements did not go toward any element of the offenses, which further minimizes the probability that they affected the case.

¶{118} As such, we do not find plain error regarding the now-disputed statements contained within the police interview.  See *Conway,* 109 Ohio St.3d 412 at ¶79-82 (finding in a capital case that it was error, but not plain error, for the jury to hear that the defendant told someone he hired that "he might have a couple other people he might need me to kill" and the comment that the defendant's "body count" was "getting astronomical."  See, e.g., *State v. Baldwin*, 1st Dist. No. C-081237, 2009-Ohio-5348, ¶13-14 (failure to object to confrontation clause violation where evidence was presented that appellant had been identified in a line-up as the shooter waives all but plain error); *State v. Kelley*, 7th Dist. No. 08JE4, 2008-Ohio-6598, ¶72 ("regardless of whether his testimony violated the confrontation clause, the testimony did not amount to plain error").  We also conclude that the result of the proceeding would not have been different had counsel successfully objected.  We thus overrule appellant's sixth and seventh assignments of error.

<u>ASSIGNMENT OF ERROR NUMBER EIGHT</u>

¶{119} Appellant's eighth and final assignment of error alleges:

¶{120} "DAVID CLEMONS WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN HIS TRIAL ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL."

¶{121} Appellant states that counsel rendered ineffective assistance of counsel for the reasons set forth in all assignments of error except the suppression assignment.  This assignment of error need not be discussed separately as it is subsumed by the discussions within each assignment of error.  For instance, the first and second assignments of error have merit based upon plain error and ineffective assistance of counsel.  Ineffective assistance of counsel was discussed in the third assignment of error.  As set forth supra, the fourth assignment of error does not actually outline an error but makes more of an anticipatory argument.  The sixth and

seventh assignments of error also dispose of the ineffective assistance of counsel arguments in their analysis. As such, this assignment is not separately analyzed.

¶{122} In conclusion, the eight third-degree felony unlawful sexual conduct with a minor convictions are amended to eight fourth-degree felony corruption of a minor convictions, and the case is remanded for resentencing under this new degree of felony. The remainder of the case is hereby affirmed.

Waite, P.J., concurs.
DeGenaro, J., concurs.